## IN THE CIRCUIT COURT OF SEVIER COUNTY, TENNESSEE
## AT SEVIERVILLE

**BILLY PROFFITT, SUGARLAND**
**WEDDINGS, INC. d/b/a SUGARLAND**
**WEDDINGS, and CHRIST IN THE**
**SMOKIES, LLC d/b/a CHRIST IN**
**THE SMOKIES MUSEUM & GARDENS,**

      **Plaintiffs,**

**v.**

    No: 18-CV-785    IV
    **JURY DEMANDED**

**FRANKENMUTH MUTUAL**
**INSURANCE COMPANY,**

      **Defendant.**

---

### COMPLAINT

COME NOW the Plaintiffs Billy Proffitt, Sugarland Weddings, Inc. d/b/a Sugarland Weddings, and Christ in the Smokies, LLC d/b/a Christ in the Smokies Museum & Garden, by and through counsel, and submit the following for their Complaint against Frankenmuth Mutual Insurance Company:

### PARTIES AND JURISDICTION

1.    Billy Proffitt ("Mr. Proffitt") is a citizen and resident of the State of Tennessee, residing at 2033 Ogle Road, Gatlinburg, Tennessee 37738. Mr. Proffitt owns the real property and improvements located at 510 River Road, Gatlinburg, Tennessee (the "Museum"), 1009 Parkway, Gatlinburg, Tennessee (the "Chapel"), and 1007 Parkway, Gatlinburg, Tennessee (the "Gift Shop") (hereinafter the "Insured Premises").

2.    Sugarland Weddings, Inc. d/b/a Sugarland Weddings ("Sugarland") is a Tennessee corporation with its principal place of business located at 1009 Parkway, Gatlinburg, Tennessee

Received Time Dec. 6. 2018 10:37AM No. 5699

**EXHIBIT**
1

37738.  At all times relevant hereto, Sugarland leased the structures and owned the business personal property/tenant improvements located at 1009 Parkway, Gatlinburg, Tennessee.

3.      Christ in the Smokies, LLC d/b/a Christ in the Smokies Museum & Gardens ("Christ in the Smokies") is a Tennessee limited liability company with its principal office located at 510 Riverbend Road, Gatlinburg, Tennessee.  The members of Christ in the Smokies are residents of the State of Tennessee.  At all times relevant hereto, Christ in the Smokies leased the structures and owned the business personal property/tenant improvements located at 510 River Road, Gatlinburg, Tennessee.

4.      Mr. Proffitt, Sugarland, and Christ in the Smokies will be collectively referred to as the "Plaintiffs" throughout this Complaint.

5.      Frankenmuth Mutual Insurance Company ("Defendant") is a Michigan insurance company conducting business in the State of Tennessee, including Sevier County, Tennessee. Defendant's principal place of business is in Frankenmuth, Michigan.

6.      This Complaint originates as the result of the November 2016 wildfires and an associated windstorm that caused substantial insured losses to the structures located on the Insured Premises, and Defendant's failure and refusal to (a) promptly and fully pay Plaintiffs' insurance claim, and (b) allow the insurance policy's appraisal clause to resolve the parties' dispute concerning the amount of the loss.

7.      Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.  Jurisdiction and venue are proper in this Court.

## FACTS

8.      At all times relevant hereto, Plaintiffs were insured pursuant to an insurance contract whereby Defendant agreed to insure the commercial buildings located at the Insured Premises against property damage, bearing Policy No. CPP 6241361 (the "Policy"). As relevant hereto, the Policy's term was December 1, 2015 to December 1, 2016.

9.      Pursuant to the Policy, the Plaintiffs had insurable interests in the Insured Premises.

10.     At all times relevant hereto, the Insured Premises consisted of commercial buildings and the surrounding area, which were operated as the Chapel, Museum, and Gift Shop.

11.     The Policy provided insurance coverage for direct physical loss to the buildings located on the Insured Premises and such other insurance coverage as specifically set forth in the Policy.

12.     The Declarations page of the Policy reflects that insurance coverage was provided for the buildings, business personal property, and loss of business income/extra expense located on the Insured Premises. The structure limit on the Museum was $2,586,557. The structure limit on the Chapel was $407,110. The structure limit on the Gift Shop was $122,600.

13.     The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss or damage except as specifically excluded or limited by the Policy.

14.     The Policy's coverage for the buildings and structures on the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

15.     Pursuant to the Policy, Plaintiffs paid an annual premium to Defendant in exchange for insurance coverage. Plaintiffs paid the required premiums at all times relevant to this Complaint.

3

16.    On November 28 2016, the Chapel, Museum, and Gift Shop on the Insured Premises, as well as the business personal property located therein, were infested and damaged by the accumulation of soot, ash residue, and other wildfire debris generated as a result of the Chimney Tops 2 wildfire that struck the area, resulting in substantial direct, physical loss. The direct physical loss and damage to the buildings and business personal property at the Insured Premises shall hereafter be referred to as the "Loss."

17.    The Chimney Tops 2 wildfire started in the Chimney Tops area of the Great Smoky Mountains National Park, approximately 5.5 miles south of the City of Gatlinburg. A high wind-driven firestorm on November 28, 2016 and into November 29, 2016 pushed the wildfire, smoke, and embers into Gatlinburg and led to evacuation of most city residences and visitors, impacting over 2,500 structures, and resulting in three deaths in the city and eleven more in Sevier County. The evacuation order was lifted on December 9, 2016.

18.    Conditions at the Insured Premises at the time of the firestorm included thick smoke, with extremely low visibility, twilight illumination, falling ash resembling snow, high winds (over seventy miles per hour), and flying debris. The interiors of the Chapel, Museum, and Gift Shop were smoky with fire debris in the air. Air quality remained hazy and poor for several days after the firestorm.

19.    After the wildfire, Plaintiffs filed an insurance claim with Defendant.

20.    While Defendant did make partial payments on the Chapel, Museum, and Gift Shop, Defendant failed to sufficiently investigate the Loss to the Insured Premises and determine the actual and real scope of damages from the Loss.

4

21.   Despite Plaintiffs spending significant sums and working diligently to repair the damage from the Loss, Plaintiffs continue to experience smoke odors and other problems as a result of the Loss.

22.   For unknown reasons, Defendant did not have any testing done by experts to determine the presence or lack thereof of soot/char from the Loss on the surfaces, wall cavities, attics, and duct work.

23.   After the Loss, the Chapel, Museum, and Gift Shop are contaminated with soot, smoke residue, char, and ash.   The wildfire debris was not present before the Loss.

24.   Plaintiffs promptly reported the Loss to Defendant.

25.   Plaintiffs fulfilled all of the duties after the Loss that were imposed upon them by the Policy to the satisfaction of Defendant.

26.   As it relates to the Loss, there is no applicable exclusion.   The Loss is a compensable claim under the Policy.

27.   Defendant has acknowledged that the Loss is a compensable claim and has made partial payments on the claim, but has not paid to restore the damaged property to pre-loss condition.

28.   Despite the fact that Plaintiffs have fulfilled all duties imposed upon them by Defendant and are at no fault in this matter, Defendant has wrongfully refused to fully and promptly pay Plaintiffs' claim for insurance proceeds.

29.   The payments made by Defendant to Plaintiffs were insufficient to indemnify Plaintiffs for the Loss and restore the Insured Premises to pre-loss condition pursuant to the Policy.

30.   Plaintiffs advised Defendant that the payments made were insufficient to indemnify them for the damage to the Insured Premises from the Loss.

5

31.    On July 10, 2017, Plaintiffs advised Defendant that they were invoking the Policy's appraisal clause because of the lack of an agreement between Plaintiffs and Defendant regarding the amount of the loss.

32.    The Policy's appraisal clause provides as follows:

### Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.    Pay it chosen appraiser; and

b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we still retain our right to deny the claim.

33.    Plaintiffs selected Chuck Howarth ("Howarth") as its appraiser.

34.    Defendant refused to select an appraiser. Defendant also refused to move forward with the appraisal process.

35.    In response to Plaintiffs' appraisal demand, Defendant denied Plaintiffs' request for appraisal, wrongfully claiming that appraisal was not appropriate.

36.    Plaintiffs submitted proofs of loss to Defendant for the Chapel, Museum, and Gift Shop, along with supporting estimates and test results showing the presence of wildfire debris from the Loss.

37.    Plaintiffs notified Defendant that there was damage to the Insured Premises beyond that originally scoped and paid for by Defendant, including the presence of soot/char/ash. Despite this, Defendant did no testing to confirm or disprove same, ignoring same.

6

38.   Wildfire residue exists in the buildings at the Insured Premises that was not present prior to the November 2016 wildfire.

39.   Defendant has not properly paid to clean, seal, and paint or otherwise restor numerous infested areas on the Insured Premises. Standard protocol also requires post-cleaning testing (which Defendant did not request nor pay for).

40.   The basis for Defendant's denial of Plaintiffs' appraisal demand was that "[t]he only remaining disputes that exist are those dealing with coverage and causation questions, which are not appropriate for appraisal." This is not true. There are no coverage issues, but instead the parties' dispute is limited to the amount of the loss.

41.   Defendant's decision to deny further payment, or even to allow appraisal to resolve the dispute, is unconscionable.

42.   Defendant's proposed scope to clean the building did not appropriately remedy the deposits of smoke and soot all over and within the surfaces and cavities of the Insured Premises, including areas which Defendant has never paid to clean, repair or restore.

43.   Plaintiffs have not been properly compensated for the damage to the Insured Premises. A smoke odor is still present, and soot testing has confirmed the presence of wildfire residue in places for which Defendant has not paid to clean, treat, or properly repair.

44.   Defendant refused, and still refuses, to make full payment to Plaintiffs for their covered loss. Defendant refused, and still refuses, to allow the contractual appraisal process to resolve the parties' dispute concerning the amount of the loss.

45.   Defendant's failure and refusal to pay Plaintiffs the amounts owed to them for the Loss, and Defendant's refusal to submit the dispute over the amount of loss to appraisal, is without justification, and was intentional, fraudulent, malicious and/or reckless.

7

46.    Defendant's failure and refusal to pay the money and benefits due and owing Plaintiffs under the Policy and refusal to submit the claim to appraisal has caused Plaintiffs to initiate this Complaint to recover the insurance proceeds to which they are entitled.

## CAUSES OF ACTION

### Count 1 – Breach of Contract

47.    The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

48.    The Policy issued by Defendant is a binding contract and is supported by valid consideration.

49.    Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the Loss.  Specifically, Defendant's breach of contract includes the following, without limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiffs for the Loss under the Building and Personal Property coverages afforded by the Policy; (b) Defendant's failure and refusal to pay such other amounts to Plaintiffs as may be required by the Policy; and (c) Defendant's refusal to honor Plaintiffs' demand for appraisal as outlined in the Policy.

50.    As a result of Defendant's breach of contract, Plaintiffs have sustained substantial compensable losses for the amounts claimed under the Policy.

51.    Defendant is liable to Plaintiffs for their losses.

52.    Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange,* 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013).  Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement

8

of Plaintiffs' claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiffs' claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiffs' claim for its own financial preservation with no reasonable or justifiable basis; (4) refused payment on Plaintiffs' claim for no valid reason whatsoever; (5) failed to treat Plaintiffs' interests with equal regard to its own; (6) promised prompt action and claim-handling, but then failed to provide full payment or even any prompt communication or status reports; (7) failed and refused to pay for obvious damage caused by the Loss; (8) failed to timely investigate, scope, and estimate the Loss; (9) knew the true facts that the buildings were damaged but falsely represented to Plaintiffs that only cleaning was needed and ignored areas for which no compensation has been paid; (10) misrepresented to Plaintiffs that only cleaning was needed when Defendant knew it had not paid for the full restoration of all affected areas; (11) refused Plaintiffs' contractual right to resolve its dispute with Defendant concerning the amount of the loss in order to protect Defendant's own financial interest to the detriment of Plaintiffs; (12) concealed important and material facts from Plaintiffs in an effort to minimize the amount Defendant would have to pay on the claim; (13) misrepresented relevant facts and policy provisions to Plaintiffs; (14) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (15) forced Plaintiffs to file suit to enforce their rights under the Policy; (16) represented to Plaintiffs that there was no wildfire residue infestation at the Insured Premises without even first performing industry standard sample testing; and (17) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial. Defendant knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the

Received Time Dec. 6. 2018 10:37AM No. 5699

intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously ignored Plaintiffs' valid claim and then denied Plaintiffs' claim and withheld monies and benefits rightfully due Plaintiffs.

53.    Plaintiffs seek, and are entitled to, punitive damages.

## Count 2 – Statutory Bad Faith

54.    The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

55.    Defendant's refusal and failure to pay the amounts contractually owed to Plaintiffs is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

56.    The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 57 below and 52 above. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously refused to pay in full Plaintiffs' valid claim and withheld monies and benefits rightfully due to Plaintiffs.

57.    Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

10

a.  Defendant's intentional failure to fully inform Plaintiffs of their rights and obligations under the Policy;

b.  Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim when liability was reasonably clear;

c.  Defendant's intentional refusal to pay Plaintiffs' claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

d.  Defendant's intentional refusal to fully investigate Plaintiffs' claim and to obtain all available information before alleging that it had no further obligations to Plaintiffs;

e.  Defendant's failure to promptly provide Plaintiffs with a reasonable and accurate explanation for its refusal to pay their claim in full;

f.  Defendant's intentional failure to properly adjust Plaintiffs' claim and to pay Plaintiffs fully for their losses;

g.  Defendant's intentional failure to pay all amounts due and owing to Plaintiffs under the Policy with no reasonable or justifiable basis; and

h.  Defendant's unjustified refusal to pay Plaintiffs' claim for its own financial preservation.

58.   In so acting, Defendant intended to and did injure Plaintiffs in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

11

WHEREFORE, as a result of the foregoing, Plaintiffs would respectfully request that this Honorable Court award a judgment to Plaintiffs as follows:

A.    For compensatory damages to Plaintiffs against Defendant not to exceed $1,500,000;

B.    For punitive damages against Defendant in an amount to be determined by the jury but not to exceed nine times the amount of compensatory damages awarded to Plaintiffs or such other amount as allowed by law;

C.    For specific performance of the Policy's appraisal clause;

D.    For a statutory bad faith penalty of twenty-five percent (25%);

E.    For all costs incurred by Plaintiffs as a result of this action;

F.    For pre- and post-judgment interest; and

G.    For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demands a jury.

Respectfully submitted,

GILBERT McWHERTER
SCOTT & BOBBITT PLC

J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
JONATHAN L. BOBBITT #23515
jbobbitt@gilbertfirm.com
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
Telephone: (615) 354-1144
Fax: (731) 664-1540

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
101 North Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340
Fax: (731) 664-1540

*Attorneys for Plaintiffs*

## COST BOND

This firm stands as surety for costs in this cause.

GILBERT McWHERTER
SCOTT & BOBBITT PLC

13